UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| TYWAN IVERSON, # 254815,              )  | |
|                                                         )  | |
|             Plaintiff,              )  | Case No. 1:06-cv-622 |
|                                                         )  | |
| v.                                                    )  | Honorable Robert Holmes Bell |
|                                                         )  | |
| "JOHN DOE" WILLIAMS, et al.,       )  | |
|                                                         )  | **REPORT AND RECOMMENDATION** |
|             Defendants.         )  | |
| _____)  | |

    This is a civil rights action filed *pro se* by a state prisoner. Plaintiff is an inmate at the Muskegon Correctional Facility located in Muskegon, Michigan. The events giving rise to plaintiff's lawsuit occurred on October 2, 2004, when plaintiff was an inmate at the Handlon Michigan Training Unit (MTU) located in Ionia, Michigan. The gravamen of plaintiff's complaint is that prison guards violated his Eighth Amendment rights, applicable to the states through the Fourteenth Amendment, by being deliberately indifferent to the serious risk of an assault on plaintiff by prisoner Pedro Morales. Plaintiff asks the court exercise supplemental over his "state law claims" (*Id.* at 6, ¶ (c)), with Michigan's constitution being the only state law referenced in the complaint. (*Id.* at 6, ¶ (a)). Plaintiff named "John Doe" Williams and "John Doe" Perry as defendants, and sued them in their individual and official capacities for monetary damages and declaratory relief.

    The matter is before me on defendants' motion for summary judgment. (docket # 8). Plaintiff filed his response (docket #'s 22-24), defendants filed their reply brief (docket # 26), and the motion is ready for decision. For the reasons set forth below, I recommend that defendants'

motion for summary judgment be granted in part and denied in part. I recommend that the motion be denied as to plaintiff's Eighth Amendment claims against defendants in their individual capacities for monetary damages for deliberate indifference to the serious risk of the October 2, 2004 assault by prisoner Morales. I recommend that defendants' motion for summary judgment be granted on all other claims.

## **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Swiecicki v. Delgado*, 463 F.3d 489, 492 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "'In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party.'" *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006)(quoting *Matsushita*, 475 U.S. at 587); *see Keweenaw Bay Indian Community v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007); *Roberts v. Ward*,

468 F.3d 963, 971 (6th Cir. 2006); *see also Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)("The district court errs by granting summary judgment where issues of credibility are determinative of the case."); *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006)("In determining whether to grant summary judgment, a court may not make determinations of witness credibility.").

## Proposed Findings of Fact

The following facts are beyond genuine issue. In September 2004, plaintiff reported to a lieutenant at MTU that a prisoner nick-named "Pete" had threatened to "butcher" him if plaintiff did not pay the $565 poker debt he owed Pete. Thereafter, plaintiff identified prisoner Pedro Morales as the person known to him as Pete. Following an investigation, prisoner Morales received a major misconduct citation for his threatening behavior. (docket # 9, Ex. 3). On September 27, 2004, plaintiff was placed in protective segregation. (Plf. Aff. ¶ 2, docket # 24). While housed in protective segregation, plaintiff was not allowed in the prison's yard and plaintiff's meals were brought to him in his cell. His out-of-cell movement was restricted to visits to health care services and showers. (Plf. Aff. ¶ 5, docket # 24; docket # 9, Ex. 5).

MTU's shower cage area has space for six prisoners. Corrections officers escort prisoners from their cells to the shower until the shower cage is full. (Williams Aff. ¶ 3, docket # 9, Ex. 2). Each prisoner is handcuffed while under escort. The prisoner is placed in the shower, and the shower cage door is locked. The prisoner then backs up to the door, and a guard standing outside the shower cage unlocks the handcuffs through the door slots. After a prisoner completes his

shower, the steps are repeated in reverse order, and the prisoner is returned to his cell. (Plf. Aff. ¶¶ 7, 13; Williams Aff. ¶ 4).

The parties offer completely different factual accounts of the events immediately preceding the October 2, 2004 assault on plaintiff by prisoner Morales. Plaintiff's affidavit declares, under penalty of perjury, that the following is true:

> We were brought to the shower almost at the same time. I was in the shower room before Morales. Defendant Williams locked me in the shower with Kilpatrick, Gray, and Ridley. When I saw that Defendant Perry was bringing Morales to the shower, I repeatedly told the Defendants that we could not be in there together, that he would kill me, and I was in segregation for protection from him. They ignored my pleas, placed him in the shower room, locked the door so none of us could get out, and began removing the handcuffs from the prisoners. They uncuffed Gray and Ridley and they began showering, then Morales backed up to the door and defendant Perry uncuffed him. As soon as the cuffs were removed from Morales, he attacked me. He hit me more times than I could count. Each time, he punched me in the head. I was handcuffed behind my back and could not defend myself, nor could I "cover up." I tried to get away but could not. Morales did not stop hitting me until he was too tired to hit any more. Then he finally backed up to the door to be handcuffed and taken out of the shower room. Neither defendant Williams nor Defendant Perry physically intervened to stop Morales from attacking me, although all they had to do was unlock the door and come in and restrain him, or let me come out of the room.

(Plf. Aff. ¶ 9).

Resident Unit Officer (RUO) George Williams was the guard who escorted plaintiff from his cell to the shower on the date of Morales's assault. (Williams Aff. ¶ 5). Williams states that the total distance from plaintiff's cell to the shower was approximately 50 feet. Williams states that he did not have any prior knowledge that plaintiff was under protective custody from prisoner Morales. (Williams 2nd Aff. ¶ 16, docket # 32-2). Plaintiff's door card did not identify Pedro Morales as the specific threat to plaintiff's safety. The door card stated "NOI-PC." (Williams 2nd Aff. ¶ 4; *see also* docket # 26, Ex. 10 ). Defendants do not dispute that when a prisoner is admitted to temporary segregation, an entry is made in the log book regarding the prisoner's name, number,

cell assignment, admission date, rule infraction or other reason for admission. According to defendants, "Announcements are not made at shift change regarding a prisoner's status." (Williams 2nd Aff. ¶¶ 9, 10; Perry 2nd Aff. ¶¶ 9, 10, docket # 32-3). RUO Williams states that plaintiff gave him no warning about the danger prisoner Morales posed. (Williams Aff. ¶¶ 3-6; Williams 2nd Aff. ¶ 11, 17). According to Williams, when he placed plaintiff into the shower, 3 other prisoners were visible. A 4th prisoner, Morales, was already in the shower with his handcuffs removed. Morales was hiding behind a wall where RUO Williams could not see him. As Williams started removing plaintiff's handcuffs through the door slot, Morales appeared from behind the wall and began hitting plaintiff with his fists without warning. (Williams Aff. ¶¶ 10-12; Williams 2nd Aff. ¶¶ 10-14). Plaintiff pulled away from Williams, covered up, and attempted to hide behind other prisoners. RUO Williams immediately called for the assistance of other guards, and ordered Morales to stop and back away. Prisoner Morales complied when Williams repeated the order. Morales's attack lasted less than five seconds. (Williams Aff. ¶¶ 13-16; Williams 2nd Aff. ¶ 12-14). RUO Williams placed Morales in handcuffs. Williams escorted plaintiff to his cell, inspected plaintiff for injuries, and saw that plaintiff had a small lump on his forehead. Williams offered to contact healthcare, but plaintiff refused. RUO Williams issued major misconduct citations against Morales for assault and disobeying a direct order. (*Id.* ¶ 17-19; *see* docket # 9, Exs. 6, 7). Prisoner Morales was later found guilty of both charges. (docket # 9, Ex. 8).

Resident Unit Officer Charles Perry's affidavit states that he did not escort Morales to the shower cage on October 2, 2004. He did not place Morales in the shower with plaintiff or remove Morales's handcuffs. Perry was not in the shower area. Perry was some 30 feet away at the officer's station. (Perry Aff. ¶¶ 3-5; Perry 2nd Aff. ¶¶ 11, 12). Perry states that he responded to

RUO Williams's request for assistance. (Perry Aff. ¶ 6). Perry heard Williams order Morales to stop and back up, and Perry saw Morales comply with the order. (*Id.* ¶ 7). Perry did not observe that plaintiff had suffered any injuries." (*Id.* ¶ 9). Perry states, "Prisoner Iverson never told me anything about any problem he had with Morales, either before this shower incident. Iverson never spoke to me." (*Id.* ¶ 8).

On October 2, 2004, plaintiff received medical treatment for his minimal injuries. Plaintiff complained of left jaw and forehead discomfort. Upon examination, plaintiff's jaw had "[n]o crepitus or deformations." Plaintiff did have a small "2 cm lump" on his right forehead. Plaintiff was instructed to rest and apply ice to his forehead and jaw. Plaintiff was provided Tylenol to treat any discomfort, and advised to notify healthcare services if he required further medical attention. (docket # 34).

On October 4, 2004, plaintiff filed a grievance against defendants Williams and Perry. The grievance was denied, and plaintiff's appeals were unsuccessful. Plaintiff filed his complaint on August 30, 2006.

## Discussion

**I.  Eleventh Amendment Immunity**

Plaintiffs' claims for monetary damages against defendants in their official capacities are barred by Eleventh Amendment immunity. Eleventh Amendment immunity is a threshold issue that should be raised and decided by the trial court. *See Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006); *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002); *Johnson v. University of Cincinnati*, 215 F.3d 561, 570-71 (6th Cir. 2000). A

suit against a state officer in his official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment generally[1] bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages against defendants in their official capacities.

**II.     Mootness**

Plaintiff's claims for declaratory relief are moot as a result of his transfer to a different correctional facility. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003).

---

[1] The well-recognized exception to the general rule is an action for prospective, non-monetary relief such as an injunction against a state officer in his or her official capacity based upon a claim that the state officer's action is unconstitutional. *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974); *Ernst v. Rising*, 427 F.3d 351, 358-59 (6th Cir. 2005)(*en banc*).

**III.    Eighth Amendment Claims**

Plaintiff alleges that defendants Williams and Perry violated his Eighth Amendment rights by being deliberately indifferent to the substantial risk that he would be assaulted by prisoner Morales. Defendants assert that they are entitled to summary judgment on the basis of qualified immunity. "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability." *Perez v. Oakland County*, 466 F.3d 416, 426 (6th Cir. 2006); *see Vakilan v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003). In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007). More recently in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), the Supreme Court emphasized that the defense of qualified immunity must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged and supported with evidence facts showing that the defendants' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) ("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis."); *accord Caudill v. Hollan*, 431 F.3d 900, 909 n.5 (6th Cir. 2005) ("[D]istrict courts . . . may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive.").

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "'To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.'" *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Eighth Amendment proscribes deliberate indifference by prison officials to an unreasonable risk of injury to prison inmates. *See Davidson v. Cannon*, 474 U.S. at 347-48 (1986); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988). In order to state an Eighth Amendment claim, two requirements must be met. First, "the deprivation alleged must be, objectively, 'sufficiently serious.' For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Woods*, 110 F.3d at 1223. In assessing the record to determine whether there is any genuine issue of material fact, the court cannot make credibility judgments and must view the evidence in the light most favorable to the non-moving party. *See General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006). Plaintiff's affidavit states, under penalty of perjury, that defendant Williams placed plaintiff in the shower cage, that defendants Perry and Williams were expressly advised of the threat prisoner Morales posed to plaintiff's safety, that defendant Perry nonetheless introduced prisoner Morales into the shower cage knowing that Morales had threatened to butcher plaintiff over plaintiff's unpaid gambling debt, and that Perry removed Morales's handcuffs but left plaintiff restrained, thus allowing Morales to assault plaintiff. I find that a reasonable trier of fact could find in plaintiff's favor on the objective component of an Eighth Amendment claim against each defendant.

The second requirement for a claim of deliberate indifference to the risk of assault against a prisoner by a fellow inmate is that the prison official have a sufficiently culpable state of mind. In *Farmer v. Brennan*, the Supreme Court held that the subjective element of a claim of deliberate indifference requires at least criminal recklessness. 511 U.S. at 839-40. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows and disregards and excessive risk to inmate health or safety; the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837; *see Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). "This burden is not light; even 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as punishment.'" *Shade v. City of Middleton*, 200 F. App'x 566, 569 (6th Cir. 2006)(quoting *Farmer* 511 U.S. at 838); *see Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006). The plaintiff's "burden can be met 'in the usual ways including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Smith v. Yarrow*, 78 F. App'x 529, 537 (6th Cir. 2003)(quoting *Farmer*, 511 U.S. at 842). Applying the aforementioned summary judgment standards, I find that a reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claim against each defendant.

The remaining inquiry in the qualified immunity analysis is whether plaintiff has alleged and supported with evidence a violation of clearly established law. In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court examined the underlying purpose of the requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez*, 466 F.3d at 428 ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001). "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[2] in light of pre-existing law, the unlawfulness must be

---

[2] "Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at 572.

apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569. Cir. 2005).

The facts stated in plaintiff's affidavit, if believed, establish violations of clearly established law. *See Flint ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 355 (6th Cir. 2001); *Doe v. Bowles*, 254 F.3d 617, 622 (6th Cir. 2001).

### IV.     State Law Claims

Plaintiff alleges that defendants violated his rights under Michigan's constitution and requests an award of monetary damages. Michigan law does not provide a cause of action for monetary damages against individual government employees for alleged violations of Michigan's constitution. *See Jones v. Powell*, 612 N.W.2d 423, 426 (Mich. 2000); *Bennett v. Detroit Police Dep't*, 732 N.W.2d 164, 170 n. 3 (Mich. Ct. App. 2006). Thus, defendants are entitled to judgment in their favor as a matter of law on plaintiff's purported state-law claims.

### Recommended Disposition

For the reasons set forth herein, I recommend that defendants' motion for summary judgment (docket # 8) be denied as to plaintiff's Eighth Amendment claims against defendants Williams and Perry in their individual capacities for monetary damages for deliberate indifference to the serious risk of assault by prisoner Morales. I recommend that defendants' motion be granted on all other claims.

Dated:  September 21, 2007              /s/  Joseph G. Scoville
                                        United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).